UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 23-158-DLB-CJS

CERTIFIED FLOORING INSTALLATION, INC.                                   PLAINTIFF

v.                          MEMORANDUM OPINION AND ORDER

JAMES YOUNG                                                             DEFENDANT

*** *** *** ***

This matter is before the Court upon Plaintiff Certified Flooring Installation, Inc.'s ("CFI") Motion to Dismiss Defendant James Young's Counterclaim (Doc. # 12). Defendant Young filed a Response (Doc. # 13), CFI filed a Reply (Doc. # 14), and so the Motion is now ripe for review. For the reasons stated herein, Plaintiff CFI's Motion to Dismiss Counterclaim (Doc. # 12) is **granted**.

I.      FACTUAL AND PROCEDURAL BACKGROUND

CFI filed its Complaint against former employee Young on November 15, 2023, alleging claims of misappropriation of trade secrets under federal and Kentucky law, breach of duty of loyalty, and tortious interference with business relationships and contracts. (Doc. # 1). Young waived service (Doc. # 7) and filed his Answer and Counterclaims on January 16, 2024 (Doc. # 11).

In his Answer and Counterclaims, Young alleges that at the time of his termination, he had accumulated paid time off ("PTO") and is entitled to payment for his remaining

1

PTO balance as well as an additional sum for an annual bonus.[1]  (Doc. # 11 at 12).  He also alleges that CFI's President and CEO "acknowledged the obligations owed to [him] via text: 'You put your notice in. So im (sic) sorry this is horrible for you but there is no issue with paying you everything you are owed. All available PTO will be paid.'"  (*Id.*).  Young alleges that CFI's President and CEO later informed him that he would not be paid, and that Young would have to sue for the benefits.  (*Id.*).  Young alleges claims of breach of contract, promissory estoppel, and quantum meruit/unjust enrichment.  (*Id.* at 12-13).

On February 6, 2024, CFI moved to dismiss the Counterclaims.  (Doc. # 12).  Young filed a Response (Doc. # 13), and CFI filed a Reply (Doc. # 14).  The Court will consider the arguments herein.

## II.     ANALYSIS

### A.     Standard of Review

The Federal Rules of Civil Procedure require a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Court uses the same standard to evaluate a counterclaim as it uses to evaluate the sufficiency of the complaint itself.  *See Baxter Bailey & Assocs., Inc. v. Powers & Stinson, Inc.*, 2015 WL 13091368, at *2 (W.D. Tenn. Jul. 10, 2015); *Gerdau*

---

[1]  After this brief statement of factual background, the annual bonus is not mentioned again in any of Young's Counterclaims nor is it referenced in any legal argument in his Response to the Motion to Dismiss (Doc. # 13), which focuses solely on the unused PTO.  CFI notes that other than this "cursory allegation," Young does not provide any bonus plan or allegation that he was entitled to a bonus prior to his termination.  (Doc. # 12 at 9-10).  As Young did not plead entitlement to a bonus with any specificity or respond to CFI's specific mention of it in his Response, the Court concludes that Young has conceded the issue of the annual bonus and will only address the issue of the unused PTO.  *See Ctr. for Biological Diversity v. Rural Utils. Serv.*, No. 5:08-cv-292-JMH, 2009 WL 3241607, at *3 (E.D. Ky. Oct. 2, 2009) ("When a party fails to a respond to a motion or argument therein, the Sixth Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived ....") (citation omitted).

*Ameristeel U.S. Inc. v. Ameron Int'l Corp.*, No. 13-CIV-07169-LGS, 2014 WL 3639176, at *2 (S.D.N.Y. July 22, 2014) ("[Rule 12(b)] applies equally to claims and counterclaims; therefore, a motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint."). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quotations omitted). The claimant must put forward enough facts that the court could reasonably infer "that the defendant is liable for the misconduct alleged." *Id*. The plaintiff's burden in doing so is low, as a court should "construe the [counterclaim] in the light most favorable to the [defendant]" in evaluating a motion to dismiss. *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017). However, the Court is not required to "accept as true legal conclusions or unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987) (citations omitted).

Only in limited circumstances may the Court disregard factual allegations made by the claimant. One such circumstance is if the allegations are "contradicted by facts established in exhibits attached to the pleading." *HMS Prop. Mgmt. Grp., Inc. v. Miller*, 69 F.3d 537 (6th Cir. 1995) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). The Court may consider "the [Counterclaim] and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to the [party's] motion to dismiss so long as they are referred to in the [Counterclaim] and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir.

2001)).

Additionally, federal courts apply the substantive law of the forum state in diversity actions. *See City of Wyandotte v. Consol. Rail Corp.*, 262 F.3d 581, 585 (6th Cir. 2001) (citing *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994)). Thus, Kentucky substantive law will apply to Young's counterclaims. That said, federal pleading standards still control. *See Lee v. Vand. Univ.*, No. 22-5607, 2023 WL 4188341, at *3 (6th Cir. June 22, 2023) (citing *Wilkey v. Hull*, 366 F. App'x 634, 637 (6th Cir. 2010)); *see also Red Hed Oil, Inc. v. H.T. Hackney Co.*, 292 F.Supp.3d 764, 771-72 (E.D. Ky. 2017).

**B.   Discussion**

**1.   Breach of Contract**

CFI first argues that the Counterclaim "contains nothing more than vague allegations which fail to state a claim under the required pleading standards for federal court," and that his claim fails as a matter of law because of the actual language of the Employee Handbook indicates that Young is not entitled to payment. (Doc. # 12 at 5). CFI attaches the relevant portions of the Employee Handbook to its Motion.[2] (*See* Doc. # 12-1). Under the heading of "Employee Separation," it states as follows:

> Accrued but unused PTO is forfeited upon employment separation for any reason with the exception of *when an employee voluntarily resigns, provides a two week written notice and works through the notice period* ...

---

[2]   As noted above, because the Employee Handbook was referenced in the Counterclaim, the Court may consider the document without converting the Motion to Dismiss into a Motion for Summary Judgment. *See Bassett*, 528 F.3d at 430.

Further, while an employee handbook is not always considered a contract, Kentucky courts have considered vacation pay to be a matter of contract between the employee and employer, and as such, determinations related to vacation pay will turn on a company's written policies. *See Berrier v. Bizer*, 57 S.W.3d 271, 281 (Ky. 2001). Based on Kentucky law and the fact that neither party argues that the Employee Handbook is not a contract, the Court will consider the Employee Handbook a contract between CFI and Young.

> Termination
> All employment with the Company is at-will employment. This means that the Company can terminate the employment relationship at any time, with or without cause, and with or without prior notice. *Employees who are involuntarily terminated, for any reason, with or without cause, will not receive any payment for accrued but unused PTO upon termination*.

(*Id.*) (emphasis added). CFI argues that because Young gave his two-week notice and was immediately terminated, he failed to work through the two-week notice period and forfeited his unused PTO. (Doc. # 12 at 6). As a result, CFI argues that the Counterclaim should be dismissed because Young is not entitled to payment under the plain language of the Employee Handbook. (*Id.*). Similarly, CFI argues that the Employee Handbook precludes the President and CEO from modifying the terms of their agreement via text message with the following language: "[n]o statement or promise by a supervisor, manager or designee is to be interpreted as a change in policy, nor will it constitute an agreement with an employee, nor will it constitute an implied or in fact contract." (Doc. # 12-1 at 5).

In his Response, Young appears to dispute that he was involuntarily terminated. He argues that CFI's statement that he was involuntarily terminated and resigned is in conflict, noting that CFI's Complaint states that "Young resigned from CFI on September 25, 2023." (Doc. # 13 at 6) (quoting Doc. # 1 at ¶ 25). He points to the allegations in his Counterclaim where he alleges that he put in his two-week notice and that CFI's President and CEO acknowledged the notice. (*Id.*). He states there is no allegation in his Counterclaim that he was immediately terminated, "thereby implying that he satisfied the condition of CFI's handbook that trigged his entitlement to payment for accrued but unused PTO" and thus, CFI breached the contract. (*Id.*). He argues he is entitled to relief because under the 12(b)(6) standard, his allegations must be accepted as true, and all

5

reasonable inferences must be drawn in his favor. (*Id.*).

To prove breach of contract under Kentucky law, a plaintiff must show: (1) existence of a contract; (2) breach of that contract; and (3) damages resulting from the breach. *Cont'l Refin. Co., LLC v. Hartford Steam Boiler Inspection & Ins. Co.*, 350 F. Supp. 3d 601, 607 n.3 (E.D. Ky. 2018) (citing *Metro Louisville/Jefferson Cnty. Gov't v. Abma*, 326 S.W.3d 1,8 (Ky. Ct. App. 2009)). "[F]or a breach of contract claim to survive a Rule 12(b)(6) motion to dismiss . . . , a plaintiff must adequately plead . . . the specific contract provision breached." *Pearson v. Specialized Loan Servicing, LLC*, No. 1:16-cv-318, 2017 WL 3158791, at *4 (E.D. Tenn. July 24, 2017) (quoting *Shafron v. Aviva Life & Annuity Co.*, No. 1:11 CV 00732, 2014 WL 763238, at *5 (N.D. Ohio Feb. 21, 2014)).

Though the Court must "construe the [counterclaim] in the light most favorable to the [defendant]," the Court is not required to "accept as true legal conclusions or unwarranted factual inferences." *See Hill*, 878 F.3d at 203; *Morgan*, 829 F.2d at 12. Young admits in his Answer and Counterclaims that he did not work the required notice period. (Doc. # 11 at ¶ 25). He specifically states, "Defendant admits only that he gave two weeks' notice of his resignation on September 25, 2023, but denies that he resigned effective that day. Rather, Plaintiff immediately terminated Defendant." (*Id.*). By Young's own admission, he did not work the required two week notice period because he was terminated. The Employee Handbook is clear that "[e]mployees who are involuntarily terminated, for any reason, with or without cause, will not receive any payment for accrued but unused PTO upon termination." (Doc. # 12-1). Both parties are in agreement that Young was involuntarily terminated, and under the express terms of the Employee Handbook, he is not entitled to his unused PTO. Thus, Young has not

6

adequately pled a breach of contract claim against CFI.

Young seems to argue that he is entitled to relief due to the other provision in the Employee Handbook that indicates he is entitled to his unused PTO if he "voluntarily resigns, provides a two week written notice and works through the notice period." (Doc. # 12-1). Even by disregarding the provision of the Employee Handbook that states employees that are terminated are not entitled to payment for their unused PTO, Young is still not entitled to relief. It is true that Young put in his two week notice, which was acknowledged by the President and CEO. However, he did not work through the notice period as the Employee Handbook requires, because he was involuntarily terminated. Under either provision, Young does not meet the terms of the Employee Handbook that would entitle him to the unused PTO. It is plain from the admissions of both parties that CFI did not breach the contract. Thus, Young has stated a counterclaim for relief which cannot be granted, and the Court **grants** CFI's Motion to Dismiss Young's Counterclaim for breach of contract.

### 2. Promissory Estoppel

CFI next argues that Young's Counterclaim for promissory estoppel should be dismissed. CFI argues that a claim for promissory estoppel is not cognizable under Kentucky law when a contract exists, and courts routinely dismiss claims for promissory estoppel when the claim is based on the same performance at issue in a breach of contract claim. (Doc. # 12 at 11-12).

Young argues in response that he pled his additional claims of promissory estoppel and quantum meruit as alternative theories of recovery in addition to his breach of contract claim. (Doc. # 13 at 6-7). He argues that he is not seeking "to enforce the promise that

arises under the contract to pay [him] for accrued but unused PTO," but rather seeking to enforce the separate promise made by CFI's President and CEO in a text message stating "there is no issue with paying you everything you are owed. All available PTO will be paid." (Doc. # 13 at 7; Doc. # 11 at ¶ 4).

Young also argues that it would be premature to dismiss his claim for promissory estoppel at this stage, quoting *Boardman v. Steel Fabricators, Ltd. v. Andritz, Inc*. (Doc. # 13 at 8) (quoting No.14-cv-2-GFVT, 2014 WL 2159743 (E.D. Ky. May 23, 2014)). Therein, this Court allowed alternative theories of recovery to proceed past the motion to dismiss stage, "at least until the contract claim is concluded." *Id.* at *2.  As discussed above, the Court has dismissed Young's claim for breach of contract, so this case is unhelpful in persuading the Court to allow his claim for promissory estoppel to proceed.

Turning to the merits of the claim, there are four elements to a promissory estoppel claim in Kentucky: "(1) a promise; (2) which the promisor should reasonably expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise." *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 778 (E.D. Ky. 2019) (quoting *Schlenk v. Goodwill Indus. of Kentucky, Inc.*, 3:16-cv-00601-JHM, 2016 WL 6836945, at *3 (W.D. Ky. May 28, 2019)); *see also Sawyer v. Mills*, 295 S.W.3d 79, 89 (Ky. 2009).  A mere formulaic pleading that a party made a promise is insufficient; rather a counterclaim must identify a specific promise that the plaintiff relied upon to his or her detriment. *Kallick v. U.S. Bank Nat'l Ass'n*, No. 2:12-cv-106-DLB-CJS, 2012 WL 5178152 at *4 (E.D. Ky. Oct. 18, 2012).  The purpose of the promissory estoppel doctrine is to allow the enforcement of certain gratuitous promises that would otherwise be

8

unenforceable for lack of consideration.  *Arnold*, 392 F. Supp. 3d at 778.

Promissory estoppel "is 'fundamentally different from a contract.'"  *Id.* (quoting *Jan Rubin Assocs., Inc. v. Hous. Auth. of Newport*, No. 2:03-cv-160, 2007 WL 1035016, at *13 (E.D. Ky. Mar. 30, 2007)).  A claim for promissory estoppel "is not intended to provide an alternative to a breach of contract claim, where a contract exists on the subject matter of the alleged promise sought to be enforced."  *Jan Rubin*, 2007 WL 1035016, at *14 (citing *Shane v. Bunzl Distrib. USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) (affirming the "widely accepted principle that promissory estoppel is applicable only in the absence of an otherwise enforceable contract" on the subject matter).

Young takes issue with CFI's citation of this rule, arguing that the text message was a promise "separate and distinct" from the Employee Handbook and thus, a separate obligation that he seeks to enforce under promissory estoppel.  (Doc. # 13 at 7-8).  This is a misreading of the law.  While Young is correct that he can plead alternative and even inconsistent claims for relief under the Federal Rules of Civil Procedure, under Kentucky law, he cannot bring a claim for promissory estoppel if there is a valid contract that covers the same subject matter.  *See Bell v. Kokosing Indust., Inc.*, No. 19-cv-53-DLB-CJS, 2020 WL 4210701, at *15 (E.D. Ky. Jul. 22, 2020).  The fact that the President and CEO of CFI made promises or assurances to Young about his unused PTO that were outside of the Employee Handbook "is immaterial, because the performance promised or assured is the same performance bargained for in the written contract[]."  *Derby Cty. Capital, LLC v. Trinity HR Servs.*, 949 F.Supp. 2d 712, 730 (W.D. Ky. Jun. 7, 2013).  As such, Young's claim of promissory estoppel fails as a matter of law and must be dismissed.

Even if the underlying Employee Handbook did not preclude Young's claim, Young does not adequately plead the elements of promissory estoppel. Young was required to identify (1) a promise; (2) which the CEO or President should reasonably have expected to induce action or forbearance on the part of Young; (3) which *does* induce such action or forbearance; and (4) that injustice can only be avoided by the promise's enforcement. *Arnold*, 392 F. Supp. 3d at 778.

Turning to the language of the Counterclaim, Young states:

> 13. Defendant relied upon Plaintiff's representation that Plaintiff would completely and satisfactorily fulfill all payment obligations to Defendant under the terms of their agreement.
>
> 14. Defendant's reliance upon Plaintiff's promises was both reasonable and foreseeable.
>
> 15. Defendant has been injured by this reliance in that Plaintiff received the benefit of his time, labor, services, and non-use of leave without completely and satisfactorily fulfilling Plaintiff's obligations to Defendant.

(Doc. # 11 at 13). That is the entirety of his Counterclaim for promissory estoppel. Young identifies the text message from the President and CEO that indicated he would be paid for his remaining unused PTO as the "promise." (Doc. # 11 at 12). But Young does not indicate what action or forbearance that the CEO or President should have reasonably expected him to take, or what action or forbearance was induced by that promise. Young simply states that he relied on the text message with no further detail. Further, as noted by CFI in its Reply, Young forfeited his unused PTO when he was terminated, *before* receiving any text message from CFI's President and CEO. (Doc. # 14 at 6). Thus, the President and CEO should not have reasonably expected Young to rely on that promise, as CFI had no remaining obligations to Young at that point. For these reasons, CFI's Motion to Dismiss Young's Counterclaim for promissory estoppel is **granted**.

### 3. Quantum Meruit/Unjust Enrichment

Finally, CFI argues that Young's Counterclaim for quantum meruit/unjust enrichment should be dismissed. CFI argues that Young did not properly plead the required elements of quantum meruit and unjust enrichment under Kentucky law, and simply restates the same allegations from his previous two claims. (Doc. # 12 at 13-14). Specifically, CFI alleges that Young did not plead what benefit CFI received from Young's unused PTO. (*Id.* at 14). In Response, Young simply notes the standard for quantum meruit and states that the Court should deny CFI's Motion for the same reasons outlined in his argument against dismissal of his claim for promissory estoppel. (Doc. # 13 at 9).

Quantum meruit and unjust enrichment are two similar but separate claims under Kentucky law. To recover under quantum meruit, a party must prove "(1) that valuable services were rendered, or materials furnished; (2) to the person from whom recovery is sought; (3) which services were accepted by that person, or at least were received by that person, or were rendered with the knowledge and consent of that person; and (4) under such circumstances as reasonably notified the person that [the party] expected to be paid by that person." *Quadrille Bus. Systs. v. Ky. Cattlemen's Assoc., Inc.*, 242 S.W.3d 359, 366 (Ky. Ct. App. 2007). To succeed on a claim of unjust enrichment, a claimant must prove that there was: "(1) benefit conferred upon [a party] at [the claimant's] expense; (2) a resulting appreciation of benefit by [the party]; and (3) inequitable retention of [that] benefit without payment for its value." *Superior Steel, Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 778-79 (Ky. 2017).

Similar to a claim for promissory estoppel, a claim for unjust enrichment is precluded where a written contract references the same subject matter. *See Ham Broad.*

11

*Co., Inc. v. Cumulus Media, Inc.*, No. 5:10-CV-185-R, 2011 WL 13232371, at *4 (W.D. Ky. Oct. 17, 2011); *Knittel v. First Fin. Mortg. Corp.*, No. 8-cv-44-JBC, 2009 WL 1702174, at *4 (E.D. Ky. Jun. 17, 2009) ("The plaintiffs cannot recover under the doctrine of unjust enrichment since the contract between the parties covers the same subject matter as to which the plaintiffs seek to impose an implied contract."). Both the Employee Handbook and the content of President and CEO's text message pertain to Young's unused PTO and whether he is entitled to it following his termination. Thus, like his claim for promissory estoppel, Young's Counterclaim for quantum meruit/unjust enrichment fails as a matter of law and must be dismissed.

Additionally, despite combining these two claims of quantum meruit and unjust enrichment, Young has failed to properly plead the elements of either. Young's reference to his promissory estoppel argument in support of his argument for quantum meruit/unjust enrichment is not helpful or compelling because promissory estoppel is a different claim with different elements. Looking to his Counterclaim, Young states that "Defendant relied upon Plaintiff's promise that Plaintiff would satisfactorily fulfill all payment obligations to Defendant under the terms of their agreement." (Doc. # 11 at 13). However, reliance is not an element of quantum meruit or unjust enrichment. *See Quadrille Bus. Systs.*, 242 S.W.3d at 366; *Superior Steel, Inc*, 540 S.W.3d at 778-79.

Young then states, "Plaintiff derived benefit from Defendant's time, labor, services, and non-use of leave . . . [and] Plaintiff has failed to completely and satisfactorily fulfill its payment obligations to Defendant such money that in equity belongs to Defendant." (Doc. # 11 at 13). That is the extent of his Counterclaim. Young does not explain in what manner CFI benefitted from Young's non-use of his PTO. Additionally, as discussed in

12

Section II.B.1, Young had already forfeited the leave when he was involuntarily terminated and did not work the two week notice period. Thus, CFI could not "fail to fulfill its payment obligations" to Young because there was no existing payment obligation. Young cites to no case law supporting the proposition that the President and CEO's text message would renew an obligation that Young had already forfeited. Thus, for each of these reasons, the Court will **grant** CFI's Motion to Dismiss Young's Counterclaim for quantum meruit/unjust enrichment.

III. **CONCLUSION**

Accordingly, **IT IS ORDERED** that:

(1) Plaintiff's Motion to Dismiss Counterclaim (Doc. # 12) is **GRANTED**; and

(2) Defendant Young's Counterclaims for breach of contract, promissory estoppel, and quantum meruit/unjust enrichment (Doc. # 11) are **DISMISSED WITH PREJUDICE.**

This 6th day of May, 2024.



Signed By:
*David L. Bunning*   DB
United States District Judge

K:\DATA\ORDERS\Cov2023\23-158 Order on MTD Counterclaim.docx